**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**

**OSAMA GOMAA,**                                                    CASE NO.:

    *Plaintiff,*

**v.**

**CAPITAL ONE, N.A., TRANS UNION, LLC,**
**EXPERIAN INFORMATION SOLUTIONS,**
**INC. and EQUIFAX INFORMATION**
**SERVICES LLC,**

    *Defendants,*

_____/

## PLAINTIFF'S COMPLAINT
## JURY DEMAND

1.      Plaintiff, Osama Gomaa (hereinafter "Plaintiff" or "Mr. Gomaa"), brings this action against Defendants Capital One, N.A. ("Capital One"), Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian") and Equifax Information Services LLC ("Equifax") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3.      Defendants' voluntary contact with Plaintiff in Florida made it foreseeable that they would be hailed into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

4.      Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Broward County, Florida.

## PARTIES

5.      Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Broward County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

6.      Defendant Capital One is a Delaware corporation registered to conduct business in the State of Florida with a principal place of business located at 1680 Capital One Drive, McLean, Virginia 22102.

7.      Capital One uses instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to the three national consumer reporting agencies, Trans Union, Equifax, and Experian (collectively "credit reporting agencies").

8.      These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications which have effects on consumers and their credit reports within the State of Florida.

9.      Defendant Trans Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

10.      Defendant, Experian is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

11.      Defendant, Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and

engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

**STATUTORY FRAMEWORK OF THE FAIR CREDIT REPORTING ACT**

12.     The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.*, was enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

13.     Congress found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(3),(4).

14.     The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

15.     Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies ("CRAs", and also referred to herein as "credit reporting agencies") were under no obligation to treat an identity theft claim any different than a regular dispute.

16.     The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required CRAs to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the

3

identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

17.     A CRA may decline to "block" information only if the CRA reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of the blocked transaction. *See* 15 U.S.C. § 1681c-2(c)(1). 15. If a block is declined the CRA must then notify the consumer promptly, in the same manner as consumers are notified of the reinsertion of information under § 1681i(a)(5)(B).  See 15 U.S.C. §§ 1681c-2(c)(2).

18.     In the absence of such a determination of material misrepresentation or error, a CRA cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. *See* 12 C.F.R. § 1022.3(i)(1)(iii)(A).

19.     "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." *Osada v. Experian Info. Solutions, Inc.,* No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

20.     The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

21.     The FCRA requires that if a consumer disputes any item of information contained in their credit file, the CRA must "conduct a reasonable reinvestigation to determine whether the

disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

22.     In performing the reinvestigation, the FCRA requires the CRA to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C.S. § 1681i(a)(4).

23.     The FCRA also requires the CRA to provide notification of the dispute to the person who provided any item that is disputed, along with all relevant information received from the consumer regarding the dispute. 15 U.S.C.S. § 1681i(a)(2)(A).

24.     The FCRA provides that if the disputed information is inaccurate or incomplete or cannot be verified, the CRA "shall…(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

25.     A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. *See* 15 U.S.C. §1681s-2.

26.     "Furnishers of information," pursuant to 15 U.S.C. §1681s-2(b), are required to conduct a reasonable investigation into each of the written disputes that they receive from the credit reporting agencies. *See Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016).

27.     The FCRA prohibits a CRA from furnishing a consumer report on a consumer unless it has reason to believe that the person requesting the report intends to use the information

in connection with a credit transaction, insurance underwriting, or other legitimate business purpose involving the consumer on whom the information is to be furnished. 15 U.S.C. § 1681b(a)(3).

28.     The FCRA prohibits a CRA from furnishing to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer. 15 U.S.C. § 1681b(c)(3).

29.     The FCRA requirements are important, because they help CRAs ensure that the information in their consumer reports is accurate, they assure that consumers know all the information that is in their files and who has received or requested their reports, and they protect consumer privacy.

30.     The FCRA provides a private right of action against any person that violates the provisions of the FCRA. 15 U.S.C. §§ 1681o, 1681n.

31.     If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a).

32.     If the violation is willful, the consumer may recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a).

33.     A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees.  15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

## **FACTUAL ALLEGATIONS**

34.     Mr. Gomaa is a victim of identity theft.

35.     On or about March 24, 2023, an identity thief used Mr. Gomaa's personal identifying information without his consent or knowledge to apply for a credit card with Capital One.

36.     On or about March 24, 2023, in response to the fraudulent application, Capital One accessed Plaintiff's Trans Union, Equifax and Experian credit reports and approved the application.

37.     On or about April 26, 2023, an identity thief used Mr. Gomaa's personal identifying information again without his consent or knowledge to apply for another account with Capital One.

38.     On or about April 26, 2023, in response to the second fraudulent application, Capital One accessed Plaintiff's Trans Union, Equifax and Experian credit reports, however, this time, Capital One declined to approve the application because Capital One's fraud department determined that the application was not submitted by the Plaintiff.

39.     In or around May 2023, Mr. Gomaa became aware that Trans Union, Equifax and Experian were reporting fraudulent information on his credit reports which included the Capital One credit card opened on or about March 24, 2023, the March 24, 2023 and April 26, 2023 hard inquiries, telephone numbers that Plaintiff never used and a Georgia address where Plaintiff never resided ("Inaccurate Information").

40.     Plaintiff then began disputing the Inaccurate Information with Defendants directly and through Credit Karma and Consumer Financial Protection Bureau.

*TRANS UNION*

41.     On or about May 6, 2023, in response to Plaintiff's dispute through Credit Karma, Defendant Trans Union removed the fraudulent Capital One credit card from Plaintiff's credit file.

42.     Trans Union, however, failed to remove and continued to include the fraudulent March 24, 2023 and April 26, 2023 hard inquiries and Georgia address in Plaintiff's credit file.

43.     On or around February 18, 2024, Plaintiff mailed a dispute letter to Trans Union disputing the March 24, 2023 and April 26, 2023 hard inquiries and Georgia address as fraudulent. With his dispute letter, Plaintiff included a copy of his driver's license, proof of residency, Federal Trade Commission identity theft report, police report number, documents related to his previous disputes and correspondence from Capital One.

44.     Defendant Trans Union did not provide Plaintiff with investigation results in response to his February 18, 2024 dispute letter.

45.     However, in subsequent reports it prepared about Plaintiff, Defendant Trans Union was no longer reporting the fraudulent Georgia address but continued to report the March 24, 2023 and April 26, 2023 inquiries under account review inquiries.

46.     On or about July 24, 2024, Plaintiff obtained a copy of his credit report from Trans Union.

47.     The July 24, 2024 Trans Union credit report included additional fraudulent inquiries from Capital One.

48.     Specifically, Plaintiff became aware that beginning in April 2023 his Trans Union credit report had been accessed at least 23 times through Capital One's credit monitoring services, CreditWise.

49.     Plaintiff does not have any credit account with Capital One or a credit monitoring account with CreditWise.

50.     Upon information and belief, Capital One was allowing the identity thief to view Plaintiff's Trans Union credit report anytime through the CreditWise credit monitoring service.

51.    On or about July 26, 2024, Plaintiff mailed a dispute letter to Trans Union disputing the March 24, 2023, April 26, 2023 and January 6, 2024 Capital One account review inquiries, Capital One inquiries through CreditWise and other inquiry and personal identifying information believed to be fraudulent.  With his dispute letter, Plaintiff included proof of residency and Federal Trade Commission identity theft report.

52.    Furthermore, Plaintiff informed Trans Union that he did not have any accounts with Capital One and believes that an identity thief was accessing his credit report through CreditWise. Plaintiff requested that Trans Union prevent any further access to his credit report through CreditWise.

53.    In response to Plaintiff's dispute letter, Trans Union provided Plaintiff with a copy of his credit report dated August 6, 2024 which indicated that Trans Union had deleted some but not all of the fraudulent Capital One inquiries.

54.    Specifically, Trans Union failed to delete the March 24, 2023, April 26, 2023 Capital One account review inquiries and Capital One inquiries through CreditWise.

55.    Notwithstanding the above, Trans Union continues to provide access to Plaintiff's credit report through the CreditWise credit monitoring service without Plaintiff's consent.

56.    As a result of Trans Union's conduct, Plaintiff suffered actual damages in the form of harm to credit score, invasion of privacy including disclosure of highly personal and private information found in his consumer reports, lost time and labor and emotional distress.

*EQUIFAX*:

57.    Similarly to Trans Union, Defendant Equifax also deleted the fraudulent Capital One account but failed to delete the fraudulent Capital One hard inquiries, and other inquiry and personal identifying information believed to be fraudulent.

58.     On or around February 18, 2024, Plaintiff mailed a dispute letter to Equifax disputing the March 24, 2023 and April 26, 2023 Capital One hard inquiries and Georgia address as fraudulent.  With his dispute letter, Plaintiff included a copy of his driver's license, proof of residency, Federal Trade Commission identity theft report, police report number, documents related to his previous disputes and correspondence from Capital One.

59.     Equifax sent correspondence to Plaintiff dated March 18, 2024 stating that it was unable to locate Plaintiff's file and requiring additional documents to verify Plaintiff's identity.

60.     On or about April 19, 2024, Plaintiff obtained a copy of his Equifax credit report which showed that Equifax was no longer reporting the March 24, 2023 and April 26, 2023 Capital One hard inquiries and Georgia address as fraudulent.

61.     Shortly thereafter, Equifax reinserted the March 24, 2023 and April 26, 2023 Capital One hard inquiries into Plaintiff's credit file.

62.     On or about July 26, 2024, Plaintiff mailed a dispute letter to Equifax disputing the March 24, 2023 and April 26, 2023 Capital One hard inquiries, the January 9, 2024 and April 18, 2024 Capital One account review inquiries, and other inquiry and personal identifying information believed to be fraudulent.  With his dispute letter, Plaintiff included proof of residency and Federal Trade Commission identity theft report.

63.     Equifax sent correspondence to Plaintiff dated August 8, 2024 stating that it was refusing to block the fraudulent information Plaintiff was disputing and requested additional documents to verify Plaintiff's identity.

64.     Equifax did not provide Plaintiff with investigation results in response to his July 26, 2024 dispute letter and continues to report the fraudulent inquiries in his credit file.

65.     As a result of Equifax's conduct, Plaintiff suffered actual damages in the form of harm to credit score, invasion of privacy including disclosure of highly personal and private information found in his consumer reports, lost time and labor and emotional distress.

*EXPERIAN:*

66.     On or around February 18, 2024, Plaintiff mailed a dispute letter to Experian disputing the March 24, 2023 and April 26, 2023 Capital One hard inquiries, two telephone numbers and Georgia address as fraudulent.  With his dispute letter, Plaintiff included a copy of his driver's license, proof of residency, Federal Trade Commission identity theft report, police report number, documents related to his previous disputes and correspondence from Capital One.

67.     Experian provided Plaintiff with investigation results dated February 29, 2024 that it had deleted the fraudulent inquiries and personal identifying information from Plaintiff's credit file.

68.     Experian further provided Plaintiff with investigation results dated March 19, 2024 that it had updated the fraudulent Capital One account and verified that the account belongs to Plaintiff.

69.     On or about July 24, 2024, Plaintiff obtained a copy of his Experian credit report showing that Experian was no longer reporting the fraudulent Capital One account but was now reporting an additional fraudulent account review inquiry from Capital One from April 18, 2024.

70.     On or about July 26, 2024, Plaintiff mailed a dispute letter to Experian disputing the April 18, 2024 Capital One account review inquiry, and other inquiry and personal identifying information believed to be fraudulent.  With his dispute letter, Plaintiff included proof of residency and Federal Trade Commission identity theft report.

71.    Experian did not provide Plaintiff with investigation results in response to Plaintiff's July 26, 2024 dispute letter.

72.    On or about September 18, 2024, Plaintiff obtained a copy of his Experian credit report which showed that Experian continues to report the fraudulent the April 18, 2024 Capital One account review inquiry.

73.    As a result of Experian's conduct, Plaintiff suffered actual damages in the form of harm to credit score, invasion of privacy including disclosure of highly personal and private information found in his consumer reports, lost time and labor and emotional distress.

_CAPITAL ONE_:

74.    Defendant Capital One has been placed on notice since at least May 2023 that the Capital One account at issue was fraudulent.

75.    However, Capital One failed to conduct a reasonable investigation into Plaintiff's dispute and erroneously verified that the fraudulent account belongs to Plaintiff to Experian in March 2024.

76.    Furthermore, when Capital One accessed Plaintiff's Trans Union credit report on January 6, 2024 and Plaintiff's Equifax and Experian credit reports on April 18, 2024 it did so impermissibly without Plaintiff's consent.

77.    Capital One falsely certified to the credit reporting agencies that it was accessing Plaintiff's credit reports for account review purposes when Plaintiff did not have a legitimate account with Capital One.

78.    Capital One had no lawful purpose for accessing Plaintiff's credit report in January and April of 2024 and accessed Plaintiff's files without his consent or knowledge.

79.     Furthermore, upon information and belief, Capital One continued to allow the identity thief to continue accessing Plaintiff's Trans Union credit report through its CreditWise credit monitoring service without Plaintiff's knowledge or consent.

80.     As a result of Capital One's conduct, Plaintiff suffered actual damages in the form of harm to credit score, invasion of privacy including disclosure of highly personal and private information found in his consumer reports, lost time and labor and emotional distress.

81.     Defendants' failure to remove fraudulent information from Plaintiff's credit reports following Plaintiff's disputes, negatively reflects upon Mr. Gomaa's financial obligations, credit score and credit worthiness to existing and potential creditors.

82.     On or about October 3, 2023, Citibank reduced Mr. Gomaa's credit limit on his existing Costco Anywhere Visa credit card.

83.     On or about April 19, 2024, Citibank declined to increase the credit limit on Mr. Gomaa's existing Costco Anywhere Visa credit card.

84.     Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. *See Pedro v. Equifax, Inc.,* 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); *See Diedrich v. Ocwen Loan Servicing, LLC,* 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); *See Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); *See Binns v. Ocwen Loan Servicing, LLC*, No. 14- 01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693,

at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to plaintiffs' credit scores and reputations were considered intangible harms"); *See Rothman v. U.S. Bank Nat'l Ass'n*, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); *See Green v. RentGrow, Inc.*, No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); *See Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, *See Coulbertson v. Experian Info. Sols., Inc.*, No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

## COUNT I – VIOLATIONS OF 15 U.S.C. §1681s-2(b)
### AGAINST CAPITAL ONE

85.     Plaintiff incorporates by reference paragraphs 1 – 8, 12 – 14, 25 – 40, 68, 74 – 75 and 80 – 83 as if fully stated herein.

86.     Capital One is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

87.     Capital One violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's February 2024 dispute when it failed to review all relevant information provided by the credit reporting agencies.

88.     As a result of Capital One's violations of the FCRA, Plaintiff has been damaged.

89.     Plaintiff's damages include damages for mental and emotional distress associated with the Capital One account remaining on his credit report(s) following his dispute, loss of credit

and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

90.     Capital One negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

91.     Additionally, Capital One committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

92.     Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Capital One in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT II – VIOLATIONS OF 15 U.S.C. §1681b(f)
## AGAINST CAPITAL ONE

93.     Plaintiff incorporates by reference paragraphs 1 – 6, 12, 27 – 33, 48, 50 – 52, 62, 69 – 70, 72, 74 and 76 - 80 as if fully stated herein.

94.     Capital One is a user of consumer reports under the FCRA.

95.     Capital One violated 15 U.S.C. §1681b(f) by impermissibly accessing Plaintiff's credit reports in January and April 2024 without Plaintiff's consent, knowledge or legitimate business purpose to do so.

96.     As a result of Capital One's violations of the FCRA, Plaintiff has been damaged.

97.     Plaintiff's damages include damages for mental and emotional distress associated with the Capital One impermissibly accessing his credit reports, loss of credit and the opportunity

to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

98.     Capital One negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

99.     Additionally, Capital One committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

100.    Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Capital One in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT III – VIOLATIONS OF 15 U.S.C. §1681q AGAINST CAPITAL ONE

101.    Plaintiff incorporates by reference paragraphs 1 – 6, 12, 27 – 33, 48, 50 – 52, 62, 69 – 70, 72, 74 and 76 - 80 as if fully stated herein.

102.    Capital One is a user of consumer reports under the FCRA.

103.    Capital One violated 15 U.S.C. §1681q by falsely certifying to Trans Union, Equifax and Experian that it was accessing Plaintiff's credit reports in January and April 2024 for account review purposes when it knew or should have known that Plaintiff did not have an account with Capital One.

104.    As a result of Capital One's violations of the FCRA, Plaintiff has been damaged.

105.    Plaintiff's damages include damages for mental and emotional distress associated with the Capital One impermissibly accessing his credit reports, loss of credit and the opportunity

to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

106.    Capital One negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

107.    Additionally, Capital One committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

108.    Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Capital One in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT IV – VIOLATIONS OF 15 U.S.C. § 1681c-2
## AGAINST TRANS UNION

109.    Plaintiff incorporates by reference paragraphs 1 – 5, 9, 12 – 24, 27 – 56 and 81 – 84 as if fully stated herein.

110.    At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

111.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

112.    Trans Union violated 15 U.S.C. § 1681c-2 by failing to block information that Plaintiff specifically identified was the result of identity theft.

113.    Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

114.     Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

115.     As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT V - VIOLATIONS OF 15 U.S.C. § 1681i
## AGAINST TRANS UNION

116.     Plaintiff incorporates by reference paragraphs 1 – 5, 9, 12 – 24, 27 – 56 and 81 – 84 as if fully stated herein.

117.     At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

118.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

119.     Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

120.     Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

121.    Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

122.    As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VI - VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST TRANS UNION

123.    Plaintiff incorporates by reference paragraphs 1 – 5, 9, 12 – 24, 27 – 56 and 81 – 84 as if fully stated herein.

124.    At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

125.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

126.    Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

127.    Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

128.    In the alternative, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

129.    As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VII – VIOLATIONS OF 15 U.S.C. 1681c-2 AGAINST EQUIFAX

130.    Plaintiff incorporates by reference paragraphs 1 – 5, 11 – 24, 27 – 40, 57 – 65 and 81 – 84 as if fully stated herein.

131.    At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

132.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

133.    Equifax violated 15 U.S.C. § 1681c-2 by failing to block information that Plaintiff specifically identified was the result of identity theft.

134.    Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

135.    Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

136.     As a result of Equifax's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VIII - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EQUIFAX

137.     Plaintiff incorporates by reference paragraphs 1 – 5, 11 – 24, 27 – 40, 57 – 65 and 81 – 84 as if fully stated herein.

138.     At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

139.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

140.     Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

141.     Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

142.     Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

143.     As a result of Equifax's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit

worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT IX - VIOLATIONS OF 15 U.S.C. §1681e(b)
### AGAINST EQUIFAX

144.    Plaintiff incorporates by reference paragraphs 1 – 5, 11 – 24, 27 – 40, 57 – 65 and 81 – 84 as if fully stated herein.

145.    At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

146.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

147.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

148.    Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

149.    In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

150.    As a result of Equifax's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit

worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT X – VIOLATIONS OF 15 U.S.C. 1681c-2
## AGAINST EXPERIAN

151.    Plaintiff incorporates by reference paragraphs 1 – 5, 10, 12 – 24, 27 – 40, 66 – 73 and 81 – 84 as if fully stated herein.

152.    At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

153.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

154.    Experian violated 15 U.S.C. § 1681c-2 by failing to block information that Plaintiff specifically identified was the result of identity theft.

155.    Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

156.    Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

157.    As a result of Experian's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT XI - VIOLATIONS OF 15 U.S.C. § 1681i
## AGAINST EXPERIAN

158.    Plaintiff incorporates by reference paragraphs 1 – 5, 10, 12 – 24, 27 – 40, 66 – 73 and 81 – 84 as if fully stated herein.

159.    At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

160.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

161.    Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

162.    Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

163.    Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

164.    As a result of Experian's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT XII - VIOLATIONS OF 15 U.S.C. §1681e(b)
### AGAINST EXPERIAN

165.    Plaintiff incorporates by reference paragraphs 1 – 5, 10, 12 – 24, 27 – 40, 66 – 73 and 81 – 84 as if fully stated herein.

166.    At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

167.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

168.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

169.    Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

170.    In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

171.    As a result of Experian's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## **JURY DEMAND**

172.     Plaintiff demands a trial by jury on all issues so triable.


Dated: December 10, 2024                     *Respectfully submitted*,

                                              **SHARMIN & SHARMIN, P.A.**

                                              */s/ Eiman Sharmin*
                                              Eiman Sharmin, Esq.
                                              eiman@sharminlaw.com
                                              FBN: 716391
                                              830 North Federal Highway
                                              Lake Worth, FL 33460
                                              Main: 561-655-3925
                                              Fax: (844) 921-1022
                                              *Attorneys for Plaintiff*